IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY | § | |
| COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2738 |
| | § | |
| LYONDELL-CITGO REFINING, L.P., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending are Defendant Lyondell-Citgo Refining, L.P.'s Motion
for Summary Judgment (Document No. 17), and Plaintiff Equal
Employment Opportunity Commission's Motion for Partial Summary
Judgment as to Liability and Defendant's Affirmative Defenses
(Document No. 28).  After carefully considering the motions,
responses, replies, sur-reply,[1] and the applicable law, the Court
concludes as follows.

I.  Background

The Equal Employment Opportunity Commission ("EEOC") brings
this employment discrimination action on behalf of Charging Party
Steve Aleman ("Aleman"), against Defendant Lyondell-Citgo Refining,

---

[1] Plaintiff EEOC's request for leave to file a sur-reply
(Document No. 34) is GRANTED, and Defendant's objection to and
request to strike the EEOC's motion for leave (Document No. 36) is
DENIED.

L.P. ("LCR"), contending that LCR violated Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), when it withdrew a conditional offer of employment to Aleman.   In October, 2004, Aleman, along with 918 others, applied for one of 25 positions as an Operator Trainee at LCR's Houston-area refinery. Document No. 29 exs. C-2, E at 17:2-10, 18:3-11.  LCR's selection process involved several steps: (1) an aptitude test administered by Certified Personnel Resources; (2) interviews with LCR personnel; (3) physical ability testing conducted by Work Ready, a third-party vendor; and (4) conditional offers contingent on the results of a pre-employment physical, reference check, and drug test.  Id. exs. C-3, E at 20:13-21:19, 22:4-7, 62:10-16, 68:17-20. Aleman was one of approximately 30 persons who advanced to the third phase of the screening process.

On December 19, 2004, Aleman took and passed a physical ability test administered by Work Ready, which required him to demonstrate, among other things, an ability to climb ladders and stairs of 120 feet and to ascend and descend an 80-foot high tower in less than 5 minutes.  Id. exs. C-8, C-9.  At that time, Aleman disclosed, and the evaluator noted, that he had undergone brain surgery at some unspecified time which affected the right side of his body, causing him to experience right leg fatigue and to limp. Id. ex. C-8.  LCR by letter dated December 23, 2004, extended to Aleman a conditional offer of employment.  Id. ex. C-6.

LCR had contracted with Memorial Hermann Hospital, through an occupational health service program called Work Link, to conduct pre-placement physicals at an on-site clinic at LCR's facility. Dr. George Hancock ("Dr. Hancock") served as medical director of the clinic.  Id. ex. H at 23:12-20.  Dan Hennington ("Hennington"), a physician's assistant, usually conducted the examinations and communicated the results to Dr. Hancock, who undisputedly had the final say regarding whether a given candidate for a position at LCR was medically qualified to perform a particular job.  Id. exs. F at 55:5-11, H at 18:24-19:1, 21:5-14, 23:12-15.  LCR had provided to Dr. Hancock and his staff a list of physical requirements for the position of Operator which included the ability to climb for one to three hours a day.  Id. exs. C-7, F at 56:1-6.

On December 29, 2004, Aleman reported to LCR's on-site clinic for the pre-placement physical.  Aleman was examined by Dr. Martha Armstrong ("Dr. Armstrong"), a physician temporarily filling in for Hennington while he was on vacation.  Id. ex. I at 30:24-31:4, 44:9-20.  As part of the examination, Aleman had completed a medical history form, in which he disclosed that he had sustained a closed head injury in April, 1986 that required hospitalization, and he had also experienced seizures.  He also filled in a "Respirator Questionnaire," in which he responded "yes" to a question that asked whether he had any weakness in his arms, hands, legs, or feet.  Id. exs. C-11, G at 40:19-43:19.  Although Dr.

3

Armstrong noted Aleman's previous brain injury and resultant seizures, she concluded based on her examination that Aleman did not have any neurological, motor strength, or reflex deficits and cleared Aleman for respirator use.  Id. exs. C-12 at 17, G at 24:7-19, 43:12-19, 59:8-24.

Upon Hennington's return in January, 2005, one of the nurses at the clinic drew his attention to Aleman's file--in particular, to the unspecified muscle weakness Aleman had disclosed in the Respirator Questionnaire.  Id. ex. I at 50:10-52:15.  Hennington contacted Dr. Hancock, bringing to his attention Aleman's disclosure on the Respirator Questionnaire and the notation on Aleman's physical ability evaluation that he suffered from right leg fatigue and a limp as a result of brain surgery.  Id. at 70:2-11.  Dr. Hancock directed Hennington to call Aleman and obtain more information about these disclosures.  Id. exs. D at 108:19-109:24, H at 118:10-15, I at 70:2-11, 16-24.

Hennington called Aleman and, according to Hennington, Aleman explained that he had sustained blunt force trauma to the head when he was 18 years old as a result of a violent crime.  The incident required surgery, caused him to suffer seizures for three years, and left him with "residual right-sided weakness [that] affected [his] upper and lower extremities."  Id. ex. D at 109:12-110:1; ex. I at 72:4-11.  In describing his condition, Aleman purportedly explained, "'Sometimes I have to remind myself to pick up my right

4

foot or it drags.'" Id. at 11-13. Hennington reported this information to Dr. Hancock. Id. ex. H at 52:22-25, 53:1-19.

Based on the details provided by Hennington, a review of Aleman's disclosures in the medical history and other forms, Hancock determined that Aleman could not safely climb ladders due to his right-side weakness. Id. ex. H at 45:22-47:9, 51:10-52:17, 53:22-24, 57:1-6, 98:16-18, 104:17-24, 105:12-15, 118:10-119:9, 120:17-23. Specifically, Hancock believed that such "unilateral" weakness in the right side of Aleman's body increased the likelihood that he might slip and fall while climbing, thereby posing a danger to himself and others. Id. at 57:17-24, 59:4-9, 102:1-12, 104:25-105:19. Dr. Hancock sent to LCR's Human Resources Department a form indicating that Aleman was not medically qualified for the Operator position. Document No. 29 ex. C-13. Based solely on this recommendation, LCR withdrew its conditional offer of employment to Aleman. Id. exs. A at 3-4 ¶ 5, 4 at ¶ 8, F at 64:25-67:8.

Aleman timely filed a charge with the EEOC, who subsequently brought this suit, alleging that LCR violated the ADA, 42 U.S.C. § 12112(a), by "refusing to hire him purportedly based on the third-party medical provider's recommendation that Aleman was unable to perform the job [of Operator]." Document No. 1 ¶ 23. The parties now cross-move for summary judgment disputing, *inter*

*alia*, whether LCR regarded Aleman as disabled, and whether Aleman had a record of disability.   Document No. 17; Document No. 28.

## II.   Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   FED. R. CIV. P. 56(c).   The moving party must "demonstrate the absence of a genuine issue of material fact."   <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998).   A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.   <u>Id.</u>   "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."   <u>Id.</u>

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden."   <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct.

2505, 2513 (1986).  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  <u>Kelley v. Price-Macemon, Inc.</u>, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing <u>Matsushita</u>, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  <u>Id.</u>

## III.  <u>Discussion</u>

### A.  <u>Standards under the ADA</u>

The ADA "prohibits an employer from discriminating against 'an individual with a disability' who with 'reasonable accommodation' can perform a job's essential functions . . . ."  <u>U.S. Airways, Inc. v. Barnett</u>, 122 S. Ct. 1516, 1517 (2002) (quoting 42 U.S.C. § 12112(a)).  Claims under the ADA are analyzed under the <u>McDonnell Douglas</u> burden-shifting framework.  *See* <u>Seaman v. CSPH, Inc.</u>, 179 F.3d 297, 300 (5th Cir. 1999) (analyzing an ADA claim under <u>McDonnell-Douglas</u>).  To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that: (1) he was "disabled"; (2) he was qualified for the job; and (3) the defendant subjected him to an adverse employment decision because of his

7

disability.  *See* <u>Talk v. Delta Airlines, Inc.</u>, 165 F.3d 1021, 1024 (5th Cir. 1999) (citing 42 U.S.C. § 12112(a)); *see also* <u>Rodriguez v. ConAgra Grocery Prods. Co.</u>, 436 F.3d 468, 474 (5th Cir. 2006). If this burden is met, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision.  *See* <u>Raytheon Co. v. Hernandez</u>, 124 S. Ct. 513, 517 n.3 (2003); <u>McInnis v. Alamo Comty. Coll. Dist.</u>, 207 F.3d 276, 279-80 (5th Cir. 2000).  Once the employer proffers such a reason, the burden shifts back to the plaintiff to prove that the reason was merely a pretext for discrimination.  <u>McInnis</u>, 207 F.3d at 280.

Central to this case is whether the EEOC has met the first prong of its *prima facie* case of disability discrimination, namely, whether it has demonstrated that Aleman was "disabled" within the meaning of the ADA.  The ADA defines "disabled" as: "(A) a physical impairment that substantially limits one or more of the major life activities of [an] . . . individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also* 29 C.F.R. § 1360.2(g).  The EEOC does not contend that Aleman actually suffered a substantially limiting impairment to a major life activity.  Rather, it asserts that LCR "regarded" him as disabled, or, alternatively, that he has a "record" of disability, both of which are addressed below.  *See* Document No. 31 at 9 (limiting its theories of liability to "regarded as" disabled and "record of" disability claims).

B.  Regarded as Disabled

The parties dispute whether LCR regarded Aleman as disabled
when it withdrew its conditional offer of employment to Aleman
based on the recommendation of Dr. Hancock, the third-party
provider who reviewed Aleman's written disclosures, considered the
information Aleman provided to Hennington during their phone
conversation, and deemed Aleman to be medically unqualified to
serve as Operator.  "In order to be 'regarded as' disabled a
plaintiff must: . . . have a physical or mental impairment that
does not substantially limit major life activities, but be treated
as such by an employer."  McInnis, 207 F.3d at 281; see also
ConAgra Grocery Prods. Co., 436 F.3d at 475; 29 C.F.R.
§ 1630.2(l)(1).  Or, the plaintiff must prove that the supposed
impairment, if it in fact existed as perceived, would be
substantially limiting.  See Dupre v. Charter Behavioral Health
Sys. of Lafayette Inc., 242 F.3d 610, 616 (5th Cir. 2001).

The EEOC asserts that Dr. Hancock, and, hence, LCR,
erroneously believed that Aleman suffered from a substantially
limiting impairment to a major life activity.  Document No. 28 at
9.  "Major life activities" are those "of central importance to
daily life," Toyota Motor Mfg., Ky., Inc. v. Williams, 122 S. Ct.
681, 691 (2002), such as "caring for oneself, performing manual
tasks, walking, seeing, hearing, speaking, breathing, learning, and
working," 29 C.F.R. § 1630.2(i).  While not also referenced in the

EEOC regulations, the Fifth Circuit has recognized "lifting, reaching, sitting, or standing" as potential major life activities. *See* Jenkins v. Cleco Power, LLC, 487 F.3d 309, 315 (5th Cir. 2007) (citing Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 725 n.7 (5th Cir. 1995)).  As the EEOC acknowledges, Dr. Hancock's deposition testimony reflects that the "only factor he considered in disqualifying Aleman from the job of Operator was . . . [Aleman's] alleged inability to safely climb . . . ."[2]  Document No. 34 at 5. Indeed, Dr. Hancock unequivocally and consistently testified throughout his deposition that the sole basis for his determination that Aleman was unqualified to serve as an Operator for LCR was his belief that Aleman's self-proclaimed right-side weakness rendered him unable safely to climb ladders.  Document No. 31 ex. H at 53:22-54:5, 57:1-6, 14-24, 59:4-7, 12-20, 98:13-18, 99:10-17, 104:18-105:7, 105:12-19.  Furthermore, the EEOC concedes that the Fifth Circuit has held that "climbing" is not a major life activity for purposes of the ADA.  *See* Document No. 31 at 15 n.7; Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 758 n.2 (5th Cir. 1996)

---

[2] The EEOC attempts to characterize Dr. Hancock's explanation for his decision as "controverted" based on "the fact that there is no physical evidence contemporaneous with the decision to show that this was, in fact [Dr.] Hancock's focus . . . ."  Document No. 35 at 3, 5.  However, the *absence* of any evidence *bolstering* Dr. Hancock's testimony does not render his explanations "controverted."  To controvert Dr. Hancock's testimony, the EEOC must submit evidence suggesting that his determination was based on considerations other than those stated in his deposition.  Having failed to do so, Dr. Hancock's testimony as to the reasons for his medical disqualification of Aleman is therefore uncontroverted.

("Climbing is not such a basic, necessary function and this court does not consider it to qualify as a major life activity under the ADA."); *see also* <u>Robinson v. Global Marine Drilling Co.</u>, 101 F.3d 35, 37 (5th Cir. 1996) (quoting <u>Rogers</u>).  That Dr. Hancock regarded Aleman as unable safely to climb is insufficient to establish that LCR regarded Aleman as substantially limited in a major life activity.

Nonetheless, the EEOC cites portions of Dr. Hancock's deposition in which he noted the impact of Aleman's self-described right-side weakness on his ability to grip, walk, and balance-- concerns that the EEOC alleges "were in Hancock's mind at the time he made the decision"--as "circumstantial evidence" that LCR regarded Aleman as substantially impaired in the major life activities of reaching/lifting, walking, standing, and balancing. Document No. 34 at 3, 5; *see also* Document No. 28 at 9. "[S]ubstantially" in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'" <u>Toyota Motor Mfg., Ky., Inc.</u>, 122 S. Ct. at 691.  To satisfy its *prima facie* burden of proving that Aleman was "regarded as" disabled, the EEOC must prove that the impairments as perceived by Dr. Hancock would render Aleman unable to perform a major life activity that an average person can perform, or would significantly restrict the condition, manner, or duration that Aleman could engage in such an activity, compared to the average person.  29 C.F.R. § 1620.2(j)(i)(i), (ii);

11

*see also* <u>Deas v. River West, L.P.</u>, 152 F.3d 471, 480 (5th Cir. 1998).  Stated differently, an employer may freely "decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job" without violating the ADA.  <u>Sutton v. United Air Lines, Inc.</u>, 119 S. Ct. 2139, 2150 (1999).

In the portions of his deposition cited by the EEOC, Dr. Hancock observed that Aleman limped, Document No. 35 ex. H-1 at 97:9, needed to "remind himself to move his leg," Document No. 29 ex. H at 53:4-6, might have an "issue" with "walking on certain structures," <u>id.</u> at 54:3-4, could experience "some difficulty with running," Document No. 29 ex. H. at 97:14-17 (emphasis added), might have had problems grasping items and gripping the bars of a ladder with his right hand, Document No. 35 ex. H-1 at 95:6-24, and lacked full coordination and balance on the right side of his body, Document No. 29 ex. H at 57:17-58:3, 98:13-99:6.  Viewed in a light most favorable to the EEOC, Dr. Hancock's statements reflect a belief that Aleman's self-professed unilateral weakness could impact activities other than climbing.  Awareness of an impairment, however, cannot alone prove that the employer regarded the employee as disabled.  *See* <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 109 (3d Cir. 1996) ("[W]e hold that the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that

12

perception caused the adverse employment action." (citing Chandler v. City of Dallas, 2 F.3d 1385, 1393 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 1386 (1994))).

Even assuming that the impairments noted by Dr. Hancock relate to Aleman's abilities to engage in one or more of the major life activities enumerated by the EEOC, Dr. Hancock's testimony reflects that he neither believed Aleman to be completely unable to engage in any particular activity, nor that Aleman's capacity to perform any activity differed more than slightly from that of non-impaired individuals. Such insignificant impairments, if they existed as perceived, are insufficient to constitute *substantial* limitations.[3]

---

[3] Indeed, courts have held impairments such as walking with a limp, mild difficulty with grasping objects, and slight balance problems to be insufficiently severe to constitute "disabilities" within the meaning of the ADA. *See, e.g.*, Philip v. Ford Motor Co., 328 F.3d 1020, 1025 (8th Cir. 2003) (inability to operate vibrating or air tools, or glue gun on a repeated basis did not establish that plaintiff was substantially impaired in his ability to grip); McCoy v. USF Dugan, Inc., 42 F. App'x 295, 297 (10th Cir. 2002) (unpublished opinion) (holding multiple sclerosis attacks that affected plaintiff's equilibrium and moderately restricted her walking ability was not a substantial impairment to the major life activity of walking); Fultz v. City of Salem, 51 F. App'x 624, 625 (9th Cir. 2002) (unpublished opinion) (assuming gripping to be a major life activity, but holding mere "difficulty" in gripping not to constitute a significant restriction); Talk, 165 F.3d at 1025 (concluding that walking more slowly with a limp did not constitute a substantial limitation); Mower v. Century I Chevrolet, Inc., Civil Action No. 02-cv-01632-MSK-MEH, 2006 WL 2729265, at *15 (D. Colo. June 16, 2006) (plaintiff's occasional loss of balance and falls down stairs did not substantially limit his walking ability); Dlugos v. Eastman Kodak Co., Civil Action No. 95-1525, 1996 WL 679411, at **5-6 (W.D. Pa. Sept. 5, 1996) (concluding plaintiff suffering from tinnitus, dizziness, and fullness of the ears failed to demonstrate that these impairments significantly restricted his ability to balance, work, or concentrate).

*See* <u>Albertson's, Inc. v. Kirkingburg</u>, 119 S. Ct. 2162, 2168 (1999)
(holding a mere "difference" in a person's ability to perform major
life activities as compared to ordinary persons does not qualify as
a "substantial limitation" unless the limitation is significant).
Moreover, the EEOC cannot satisfy its summary judgment burden by
asserting in conclusory fashion that Dr. Hancock's perception of
Aleman as unable safely to climb "necessarily" means that he
regarded Aleman as *also* "substantially limited in one or more major
life activities," Document No. 28 at 9.   *See, e.g.*, <u>Pegram v.</u>
<u>Honeywell, Inc.</u>, 361 F.3d 272, 286 (5th Cir. 2004) (rejecting a
plaintiff's "conclusory allegations" that she was substantially
limited in a major life activity); <u>Deas</u>, 152 F.3d at 479 (rejecting
plaintiff's "bald assertion" that because defendant's medical
provider believed the plaintiff suffered from seizures, he must
also have "perceived her as being substantially limited in the
major life activities of seeing, hearing, and speaking").   "Where,
as in the case *sub judice*, the claim is that [an individual] was
'regarded as' having a substantially limiting impairment, the
requirement that the perceived impairment be substantially limiting
remains, and the plaintiff bears the burden of making a *prima facie*
showing that the impairment, as the defendant perceived it, was
substantially limiting." <u>Deas</u>, 152 F.3d at 480.   The EEOC has
wholly failed to make this requisite showing, and, accordingly, LCR

is entitled to summary judgment on the EEOC's "regarded as" disabled claim.[4]

## C.   Record of Disability

In the alternative, the EEOC contends, and LCR disagrees, that Aleman is disabled because of an alleged record of disability. Document No. 32 at 11-13; Document No. 28 at 12-13  A plaintiff has a record of disability if he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k).  "Although an individual may show that he or she has a record of impairment, if he or she fails to show that the impairment is substantially limiting, the individual may not qualify as disabled under this prong."  Blanks v. Sw. Bell Commc'ns, Inc., 310 F.3d 398, 402 (5th Cir. 2002); see also Tice v.

---

[4] The EEOC throughout its briefing criticizes LCR for basing its employment decision on the allegedly inadequate evaluation of Aleman's physical condition performed by Dr. Hancock. See, e.g., Document No. 28 at 11; Document No. 31 at 12-13.  Because the EEOC failed to meet its prima facie burden of proving that LCR regarded Aleman as disabled, the Court finds it unnecessary to address whether Dr. Hancock conducted a sufficiently particularized inquiry to legitimize LCR's reliance on his determination. See ConAgra, 436 F.3d at 481-82 (holding, in pertinent part, that a defendant employer's burden under McDonnell-Douglas of articulating a legitimate, non-discriminatory reason for its employment decision cannot be satisfied by relying on a "blanket determination" by its third-party medical provider that a candidate for employment is unqualified to work in any capacity for the defendant, when that provider failed to consider any "particularized evidence" or conduct an "individualized review").

Ctr. Area Transp. Auth., 247 F.3d 506, 513 (3d Cir. 2001) ("A plaintiff attempting to prove the existence of a 'record' of disability still must demonstrate that the recorded impairment is a 'disability' within the meaning of the ADA.").

Although the EEOC contends that Aleman's "history of both seizures and right[-]side weakness . . . *can be* substantially limiting to a number of major life activities, including walking, standing and balance[,]" Document No. 28 at 12 (emphasis added), *see also* Document No. 31 at 18, it presents no evidence suggesting that these impairments *actually* posed substantial limitations to Aleman's ability to walk, stand, balance, or, indeed, to engage in any recognized major life activity. *See, e.g.*, Dupre, 242 F.3d at 615 (holding record of back surgery vaguely referenced in medical screening form did not indicate whether or how plaintiff's condition substantially limited a major life activity); Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1121 (5th Cir. 1998) (rejecting a "record of disability" claim based on plaintiff's prior back surgery and disability leave, where "the evidence fails to show that the impairment substantially limits a major life activity"); Lomastro v. Caddo Parish Sheriff, No. CIVA 05-320, 2006 WL 1805875, at **3-4 (W.D. La. June 29, 2006) (holding plaintiff's history of seizures does not constitute a history of disability).

The EEOC's assumption that Aleman's seizures and unilateral weakness constitute disabilities *per se* contravenes the

individualized, case-by-case proof of disability required to prevail on an ADA claim. *See* <u>Deas</u>, 152 F.3d at 477-78 (declining to "depart from [the] general practice of determining disability status on a case-by-case basis," and refusing to recognize seizures as a disability *per se*). At most, Aleman's medical disclosures reflect a record of impairment, which is insufficient to raise a genuine issue of material fact as to whether those impairments substantially limited his ability to engage in any particular major life activity. *See* <u>Blanks</u>, 310 F.3d at 402; <u>Robinson</u>, 101 F.3d at 37 (holding diagnosis and documentation of asbestosis in plaintiff's personnel file reflected an impairment, but failure to present evidence that plaintiff was substantially impaired in a major life function warranted summary judgment for the employer). Accordingly, LCR's motion for summary judgment on the EEOC's "record of" disability claim is granted.[5]

---

[5] The EEOC's further contention that LCR cannot prevail on summary judgment because it "did not move for summary judgment on Plaintiff's 'record of' [disability] claim" must also be rejected. Document No. 34 at 4. Whether Aleman had a "record of" disability is merely one of several means by which the EEOC may prove that Aleman was "disabled." *See* 42 U.S.C. § 12102(2) (defining "disability" to include, *inter alia*, "a record of" an impairment substantially limiting one or more major life activities). It is neither a separate claim, nor was it pled as such. *See* Document No. 1 at 4 ¶ 23. LCR in its summary judgment motion asserts that Aleman was not "disabled" within the meaning of the ADA, and specifically argues in its reply that Aleman has no record of disability. *See* Document No. 17 at 9; Document No. 33 at 6-7. Therefore, LCR has in fact moved for summary judgment on this alternative theory of liability under the ADA.

17

IV.   <u>Order</u>

Accordingly, it is

ORDERED that Defendant Lyondell-Citgo Refining, L.P.'s Motion for Summary Judgment (Document No. 17) is GRANTED, and Plaintiff Equal Employment Opportunity Commission's claims are therefore DISMISSED on the merits.  It is further ORDERED that the EEOC's Motion for Partial Summary Judgment is DENIED (Document No. 28).

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 9th day of April, 2008.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE